IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER **(205) 886-6070**, THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE US, INC. | Case No. 23-735 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Brandon D'Alessandro being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(205) 886-6070**, ("the **TARGET TELEPHONE**"), that is stored at premises controlled by T-Mobile US, Inc., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile US, Inc. to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Deputy United States Marshal (DUSM) with the United States Marshals Service (USMS) Western Pennsylvania Fugitive Task Force (WPAFTF) and have been so employed for over 13 years.  In my current position, on the WPAFTF, I investigate violations of federal criminal laws, including violations of Title 18 U.S.C. § 2250.  I am one of the case agents

with primary responsibility for this investigation, and I have been personally involved in the investigation. I have participated in multiple investigations with USMS, including search warrants for cell phone location data, of the type requested here.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2250 (Failure to Register) have been committed, are being committed, and will be committed by Terry BONNER ("BONNER"). There is also probable cause to search the information described in Attachment A for [evidence, instrumentalities, contraband, or fruits] of these crimes as further described in Attachment B.

## APPLICABLE STATUTE

5. This investigation involves possible violations of Title 18 U.S.C. § 2250(a) which states that a defendant is guilty of a violation when they are a person who is required to register under the Sex Offender Registration and Notification Act (SORNA), traveled in interstate or foreign commerce, and knowingly failed to register or update their sex offender registration.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States (including a magistrate judge of such a court) . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

7. On June 1, 2016, Terry BONNER was convicted of Sexual Abuse 1st Degree in Tuscaloosa County, Alabama. BONNER was adjudicated as sex offender, subject to the registration requirements of the Sex Offender Registration and Notification Act (SORNA).

8. On February 9, 2021, a warrant was issued by the Tuscaloosa County Sheriff's Office for Failure to Register as Sex Offender.

9. On January 28, 2023, a warrant was issued by the Pittsburgh Bureau of Police for BONNER for burglary, terroristic threats, and simple assault. The warrant was obtained because of an incident in which BONNER assaulted his ex-girlfriend.

10. On February 2, 2023, Pittsburgh Bureau of Police (PBP) Detective Jeffrey Brock learned that BONNER was possibly utilizing a phone which was identified as (205) 886-6070. The phone number was obtained from an interview Detective Brock conducted with BONNER's ex-girlfriend.

11. On April 4, 2023, DUSM Brandon D'Alessandro queried NCIC-QXS and the National Sex Offender Public Website (NSOPW). The query identified registration records for BONNER. Tuscaloosa County Sheriff's Office was the only jurisdiction showing active registration records for BONNER. The records describe BONNER's registration requirement as "NONEXP" or non-expiring.

12. On April 6, 2023, PBP Detective and Task Force Officer (TFO) Joseph Novakowski learned that BONNER was staying at a residence in Pittsburgh, Pennsylvania at zip code 15210.

13. On April 7, 2023, TFO Novakowski formulated a plan for PBP Detective Sheila Ladner to act in an undercover capacity to attempt to make phone contact with BONNER.

Detective Ladner began having phone contact with BONNER via text messaging and phone conversations in an undercover capacity with the intentions of purchasing illegal narcotics. Detective Ladner contacted BONNER through the phone number (205) 886-6070. During these conversations, the user of the phone identified themselves as "Terry".

14. On April 18, 2023, Detective Ladner communicated with BONNER, and they planned to meet at approximately 1500 hours with the purpose of Ladner purchasing seventy dollars' worth of marijuana from BONNER. PBP Fugitive Apprehension Unit (FAU) and the Western Pennsylvania Fugitive Task Force (WPAFTF) members conducted surveillance in the vicinity of the location where Detective Ladner and BONNER planned to meet. The agreed upon meet location was 23 Merrit Avenue, Pittsburgh, Pennsylvania 15210. Detective Brock maintained surveillance at the Pittsburgh, Pennsylvania residence where BONNER was staying.

15. At approximately 1456 hours, Detective Brock was able to see what appeared to be BONNER exit the front door of the residence. BONNER was accompanied by a second male, who was later identified as Clyde SIMMONS, who also exited the front door. Clyde SIMMONS entered the driver's seat of a silver 2023 Nissan Rogue and BONNER entered the passenger seat of that same vehicle.

16. At approximately 1503 hours, TFO Novakowski observed the Nissan Rogue driving on Merrit Ave with BONNER in the passenger seat. PBP FAU members approached the vehicle and BONNER was taken into custody. During a search incident to arrest, PBP FAU member Lukitsch recovered an Android phone from BONNER's right, front pants pocket. After the phone was recovered, Detective Ladner called (205) 886-6070. BONNER's phone rang displaying Ladner's phone number confirming that BONNER possessed the phone used to arrange the narcotics transaction. BONNER also provided DUSM Brandon D'Alessandro an Alabama

driver's license confirming he was Terry BONNER.

17.     At the time of BONNER's arrest on April 18, 2023, BONNER was unregistered as a sex offender in Pennsylvania. On April 20, 2023, DUSM D'Alessandro notified the Pennsylvania State Police's (PSP) Megan's Law Section that Terry BONNER was arrested. On April 26, 2023, BONNER, was registered with PSP Megan's Law Section from the Allegheny County Jail.

18.     On May 9, 2023, PSP Megan's Law Section provided a registration work up of BONNER's requirements to register as a sex offender. It was determined that BONNER is designated as a Tier 2 offender in Pennsylvania. Tier 2 registrants have a 25-year requirement to register in Pennsylvania.

19.     On May 10, 2023, DUSM D'Alessandro and PBP Detective Brock conducted an interview of Christina CARTER. CARTER is the ex-girlfriend of BONNER and victim of his January 27, assault. According to CARTER, BONNER and CARTER began dating in October of 2022. She said that they dated for approximately two months and that he partially lived with her at 740 Lorenz Avenue, Pittsburgh Pennsylvania. CARTER also stated that their romantic relationship ended around December of 2022, and BONNER moved out of her residence. From there on BONNER began living at other residences in the City of Pittsburgh. DUSM D'Alessandro asked CARTER if she had BONNER's cell phone number from when they were dating. CARTER responded that she deleted everything involving BONNER from her phone but was able to recall BONNER's cell phone number from memory. She provided the phone number of (205) 886-6070 as the phone number BONNER utilized.

20.     On May 1, 2023, DUSM Brandon D'Alessandro conducted a check of the cellular number (205) 886-6070 which showed the number belonged to T-Mobile US, Inc. and has not been ported.

21.     In my training and experience, I have learned that T-Mobile US, Inc. is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

22.     Based on my training and experience, I know that T-Mobile US, Inc. can collect cell-site data about the **TARGET TELEPHONE**.  I also know that wireless providers such as T-Mobile US, Inc. typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

23.     Based on my training and experience, I know that wireless providers such as T-Mobile US, Inc. typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless

providers such as T-Mobile US, Inc. typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **TARGET TELEPHONE**'s user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25. I further request that the Court direct T-Mobile US, Inc. to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile US, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

*/s/ Brandon D'Alessandro*
BRANDON D'ALESSANDRO
Deputy U.S. Marshal
United States Marshals Service

Sworn and subscribed to me, by telephone
pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 15th day of May, 2023.

_____
HONORABLE MAUREEN P. KELLY
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **205-886-6070** ("the Account"), that are stored at premises controlled by T-Mobile US, Inc. ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

1

## ATTACHMENT B

### Particular Things to be Seized

**I.   Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **December 1, 2022 (00:00 hours) – April 18, 2023 (23:59 hours)**:

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

       viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

       i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

**II.  Information to be Seized by the Government**

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18, United States Code, Section 2250(a) involving **Terry BONNER** during the period **December 1, 2022 (00:00 hours) – April 18, 2023 (23:59 hours)**:

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.